IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JEFFREY BOYD**, | ) |
| | ) |
| Defendant. | ) |

**4:22-cr-00296 RWS/PLC**

## INDICTMENT

### THE GRAND JURY CHARGES:

### COUNTS ONE-TWO
### WIRE FRAUD

A. INTRODUCTION

At all times relevant to the Indictment:

1. The defendant, **JEFFREY BOYD** (hereinafter referred to as "**BOYD**"), was a resident of the City of St. Louis, Missouri, and served as the Alderman for the 22nd Ward. **BOYD** owned and operated a used car sales business, known as The Best Place Auto Sales, located on Martin Luther King Drive in St. Louis, Missouri.

2. An individual whose identity is known to the Grand Jury (hereinafter referred to as "John Doe") owned and operated Moe Xpress Auto Sales & Services, LLC, (hereinafter referred to as "Moe Xpress") a used car sales business, located on West Florissant Avenue in Jennings, Missouri.

3. On or about January 17, 2021, an automobile accident occurred at Moe Xpress, where an automobile drove onto the Moe Xpress car lot and collided with and damaged a number

1

of vehicles owned and held for sale by Moe Xpress. Those damaged vehicles included a 2014 BMW sedan, a 2016 Nissan sedan, and a 2017 Nissan sedan. Also on the Moe Xpress lot at the time of the January 17, 2021 accident was a Chevrolet Impala vehicle owned by **BOYD's** Best Place Auto Sales, which was at Moe Xpress for prior repairs.

4. Immediately following the accident, John Doe contacted his insurance agent and learned that the Moe Xpress insurance policy would not cover the damage and loss to the BMW and the two Nissan vehicles because Moe Xpress was not negligent in causing the accident. John Doe advised **BOYD** that the Moe Xpress insurance policy would not cover the damage and loss to the BMW and the two Nissan vehicles.

B.     SCHEME TO DEFRAUD

5. Beginning on or about January 17, 2021, and continuing through on or about February 28, 2021, in the Eastern District of Missouri and elsewhere, defendant,

**JEFFREY BOYD,**

acting with one and more other individuals known and unknown to the Grand Jury, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from Burlington Insurance Company, by means of materially false and fraudulent pretenses, representations, and promises.

6. It was a part of the scheme that, on or about January 18, 2021, **BOYD** met with John Doe at Moe Xpress and looked at the damage to the BMW and two Nissan automobiles owned by Moe Xpress, as well as the damage to the Chevrolet Impala owned by Best Place Auto Sales. **BOYD** and John Doe discussed the fact that the Moe Xpress insurance policy would not provide insurance coverage for the damage to the three Moe Xpress automobiles. **BOYD** and John Doe discussed their belief that the Moe Xpress insurance policy would cover the damage to the

2

Chevrolet Impala because that vehicle was owned by **BOYD's** company, Best Place Auto Sales. In order to get John Doe's insurance company to provide coverage for the three Moe Xpress vehicles, **BOYD** suggested to John Doe that they falsely represent that the BMW and two Nissan vehicles had previously been sold to **BOYD's** Best Place Auto Sales.

> **BOYD**: "…what if you had them sold, wouldn't the insurance company have to pay you for it then?"
>
> John Doe: "If I had a record of them being sold."
>
> **BOYD**: Yeah, if you sold them last week, but you're just waiting for them to come pick it up."

7. As a further part of the scheme, on January 19, 2021, **BOYD** met with John Doe, and the two discussed the scheme to falsely represent to Moe Xpress's insurance company that the BMW and two Nissan vehicles had been sold to Best Place Auto Sales prior to the January 17, 2021 accident.

8. As a further part of the scheme, on January 21, 2021, **BOYD** met with John Doe at Moe Xpress. **BOYD** filled out, completed and signed Missouri Department of Revenue Bill of Sale forms for the BMW and two Nissan vehicles, with each form falsely representing that the vehicle had been sold by Moe Xpress to Best Place Auto Sales on January 2, 2021, prior to the January 17, 2021 accident. **BOYD** also falsely represented on each of the Bill of Sale forms a purported sales price for each of the three vehicles which **BOYD** determined based upon information obtained via CarFax as to average sales prices for similar vehicles. In falsifying the purported sales prices, **BOYD** also considered what price he could reasonably resell each car for, had he actually purchased the vehicles as falsely represented on the Bill of Sale forms. For example, relative to the 2017 Nissan vehicle, **BOYD** set a false sales price of $6,000.

> **BOYD**: "Need to make it look like I can make some money on it…If we make it $6,000, I can sell it for $7,000."

Further, **BOYD** signed and executed Certificates of Title for each of the three vehicles, again falsely representing that each of the vehicles had been sold by Moe Xpress to Best Place Auto Sales on January 2, 2021.

      9.    On January 25, 2021, **BOYD** and John Doe engaged in a 3-way telephone call in which John Doe telephoned the insurance agent for Moe Xpress and discussed the claim on the four vehicles: the Chevrolet Impala and the three other vehicles which were falsely represented as having been sold to Best Place Auto Sales prior to the January 17, 2021 accident. **BOYD** remained silent during the portion of the telephone call with the insurance agent. During the telephone call, Moe Xpress's insurance agent advised that none of the four vehicles would be covered under Moe Xpress's insurance policy, as Moe Xpress's policy only covered damage to vehicles on Moe Xpress's car lot where Moe Xpress had been negligent. Following that telephone call, and as a further part of the scheme, **BOYD** and John Doe discussed submitting the claim on all four damaged vehicles to the insurance company which insured The Best Place Auto Sales' vehicles. **BOYD** advised John Doe that The Best Place Auto Sales business was insured by the Burlington Insurance Company up to $20,000 total for this type of damage claim, and **BOYD** and John Doe discussed that they would split any insurance proceeds **BOYD** received from Burlington Insurance Company on his false claim for damages relative to the four vehicles.

      10.    As a further part of the scheme, on or about January 28, 2021, **JEFFREY BOYD** submitted a false claim to the Burlington Insurance Company, falsely claiming that all four vehicles damaged on January 17, 2021 had been owned by The Best Place Auto Sales at the time

of the accident. In reliance upon **BOYD's** false claim, the Burlington Insurance Company opened its Claim Number 226325.

11.     As a further part of the scheme, between January 29, 2021 and February 3, 2021, **BOYD** conducted telephone discussions with the Burlington Insurance Company Claim Examiner, who was located in Chapel Hill, North Carolina, to process **BOYD's** false claim relative to the BMW and two Nissan vehicles.

12.     As a further part of the scheme, on January 31, 2021, **BOYD** met with John Doe and discussed the false insurance claim. In order to conceal the fraud scheme, **BOYD** wanted to make sure that both he and John Doe had the same "story" together concerning the BMW and two Nissan automobiles.

> **BOYD**:   "I want to talk to you about the insurance. So, I just thought about this the past couple of days, if they ask you why I had so many cars up here. The Impala was here because I needed the heat [fixed], you know that clicking noise….The other three cars, it says I bought them January 2nd, so why didn't I take them with me? You know? Why didn't I take them with me? So, we've got to be in sync on the fact, they were here, I paid for them because you gave me a good deal. I didn't want to, you know, I didn't need to pick them up right away so you just holding them until I come pick them up."
>
> John Doe:   "What about the payment, you want to give me a check and keep a copy of it?
>
> **BOYD**:   "Yeah, I can do that, I may not have to unless they ask you for it. I don't have the money to cover it if you cash it."
>
> John Doe:   "I'm not going to cash it."
>
> **BOYD**:   I know, but I can give you the check any time. And back-date it. Only if they ask you for it, I'll just give it to you. Just trying to make sure, if they ask you something, they ask me something, we've got the same story. It shouldn't be a real big deal, but I just thought it may….I'm trying to think from the insurance perspective. 'Why did he have four cars on that lot?' Just wanted to make sure we were in sync if they ask about why the cars were there, why they sat there so long."

5

John Doe:   " I don't think they'll go through all that."

**BOYD**:   "I hope not.   I'm a paranoid guy.   I'm always trying to do the right thing.   You know, the first time you try something, you know….They could make it seem like there's something strange about four cars, that's the only thing I'm concerned about."

13.     As a further part of the scheme, on February 2, 2021, **BOYD** and John Doe discussed falsely stating that each of the four damaged vehicles was accruing a $50 charge per day in storage fees, in order to receive additional money from the false insurance claim.   Relative to this false storage fee claim, **BOYD** and John Doe agreed to split any insurance proceeds received.

John Doe:   "…like the cars…we split 50/50."

In fact, John Doe was storing the four vehicles at one of his business lots, and there was no associated daily storage fee.   Further, on February 3, 2021, **BOYD** advised John Doe that he was going to email the Burlington Insurance Company Claim Examiner and claim that he was paying the daily fee to store the damaged vehicles in the hopes of getting the Claim Examiner to expedite the claim.

**BOYD**:   "I've just been trying to get ahold of this insurance guy.   But in case he asks me, you know, where the cars are, I've got to make sure I have that information.   'Cause I'm gonna email him and let him know that I'm spending $200 a day for storage.   Maybe that'll get him to get back with me soon.   It's just a fucking shame it's been a week."

14.     As a further part of the scheme, on February 3, 2021, **BOYD** sent an email to the Burlington Insurance Company Claim Examiner, falsely claiming that **BOYD** was paying a daily storage fee totaling $200 for the four damaged vehicles.

**BOYD**:   "I have called you three times.   I hope you are well.   I'm being charged $50 per day per automobile for the vehicles that were damaged.   They had to be removed from the lot where they were hit."

On that same date, **BOYD** had a telephone conversation with the Burlington Insurance Company Claim Examiner where **BOYD** falsely stated that the 4 damaged vehicles were owned by him and that they were on the Moe Xpress lot to have repairs made at the time of the accident.

15.     As a further part of the scheme, on February 4, 2021, **BOYD** sent via email over the internet copies of the false Bill of Sale forms, and the false Certificate of Titles for the BMW and the two Nissan vehicles to the Burlington Insurance Company Claim Examiner in Chapel Hill, North Carolina in support of **BOYD's** false insurance claim.    **BOYD** also included a false document titled "The Best Place Auto Sales LLC Accident Inventory" he had prepared which falsely listed the BMW and two Nissan vehicles as having been purchased by his company on January 2, 2021 with false purchase prices totaling $22,000.

16.     On February 5, 2021, the Burlington Insurance Company Claim Examiner emailed **BOYD** and advised him that the Burlington Insurance Company was denying **BOYD's** claims on the BMW and two Nissan vehicles because they were "salvage titles," and not covered under The Best Place Auto Sales' insurance policy.    The Claim Examiner also advised that, as the purchase price of the Chevrolet Impala was $1,000 and **BOYD's** insurance policy had a $1,000 deductible, Burlington Insurance would be unable to make any payments.    **BOYD** continued in his attempts to get Burlington Insurance Company to pay on the false insurance claim, but was ultimately unsuccessful.    **BOYD** also attempted to have his insurance agent intervene and get the false claim

paid, as he advised John Doe on February 10, 2021, but that attempt was also unsuccessful.

> **BOYD**: "I recontacted my insurance agent and I said, 'look, you gotta figure out how to [get my claim paid], this is bullshit. That's a clear title.' I said, 'if I'm not going to be insured for a prior salvage [title] when I buy a car with a clear title and then the insurance company says oh no there's a claim against it, that's not fair.' You know, it's not a prior salvage. So, we'll see."

## C. THE WIRES

### COUNT ONE

17. On or about February 3, 2021, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including an email via the internet from St. Louis, Missouri to Chapel Hill, North Carolina which falsely represented that defendant was paying daily storage fees on the damaged automobiles when, in fact, he was not.

### COUNT TWO

18. On or about February 4, 2021, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including

false automobile Bill of Sale forms, false automobile Certificate of Titles, and a false Accident

Inventory sent by email via the internet from St. Louis, Missouri to Chapel Hill, North Carolina.

All in violation of Title 18, United States Code, Sections 2, 1343, and 1349.

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
HAL GOLDSMITH, #32984(MO)
Assistant United States Attorney